**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| CHARLES ELLIOT HILL II, | : | CIVIL ACTION NO. |
| BOP # 65586-019, | : | 2:15-CV-23-WCO-JCF |
| Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 2:13-CR-51-WCO-JCF-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
| Respondent. | : | 28 U.S.C. § 2255 |

### MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

On January 28, 2015, Movant filed a counseled 28 U.S.C. § 2255 motion to vacate his sentence, presenting two grounds for relief. (Doc. 26). On March 9, 2015, the government moved to dismiss the § 2255 motion. (Doc. 28). On December 14-15, 2015, the undersigned conducted a hearing on Movant's claims. (Docs. 41, 43). The parties have now briefed the issues that remain unresolved (Docs. 47-49), and Movant has moved to amend his § 2255 motion to add a third ground for relief (Doc. 53). **IT IS RECOMMENDED** that both the motion to amend and the § 2255 motion itself be **DENIED**.

### I.   **Background**

On December 12, 2013, Movant was charged by information with concealing $183,000 in cash from his bankruptcy estate, between July 4, 2011 and May 14, 2012,

in violation of 18 U.S.C. § 152(1) (Doc. 1), and he proffered his plea of guilty to that charge (*see* Docs. 3-6).

### A.   <u>The Plea Agreement</u>

Included in Movant's Guilty Plea and Plea Agreement is a Limited Waiver of Appeal:

> To the maximum extent permitted by federal law, the [Movant] voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any postconviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the [Movant] may file a direct appeal of an upward departure or variance above the sentencing guideline range as calculated by the district court.

(Doc. 5 ¶ 23).  The Plea Agreement also provides that Movant "understands that the Court may impose a sentence up to and including the statutory maximum [of 5 years] . . . and that *no one can predict his exact sentence at this time*" (*id.* ¶ 8 (emphasis added)), and also "that the Court's failure to accept one or more of the [government's] recommendations, stipulations, and/or guideline computations *will not constitute grounds to withdraw his guilty plea* or to claim a breach of this Plea Agreement" (*id.* ¶ 22 (emphasis added)).  Movant signed the Plea Agreement (*id.* at 12) and separately signed the following addendum:

> I have read the Information against me and have discussed it with my

2

attorney.  *I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial.*  I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney.  *I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them.*  I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding.  *No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement.*  The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission.  *I am fully satisfied with the representation provided to me by my attorney in this case.*

(*Id.* at 12-13 (emphasis added)).

## B.    The Plea Hearing

At his plea hearing, Movant acknowledged the following:

1.    he understood the terms of his plea agreement (Doc. 31-1 at 12-18);

2.    he understood the trial rights he was waiving by pleading guilty (*id.* at 18-20);

3.    he had received neither threats nor promises other than those outlined in the plea agreement inducing him to plead guilty (*id.* at 17-18);

4.    he was in fact guilty of his crime of conviction, based on the factual predicate set forth by the government, because he had concealed "some amount" of money, although he disagreed with the government's calculation of the total amount of the concealment, and he would argue for a lesser amount at sentencing (*id.* at 18, 20-21, 24-26, 27-28);

3

5.      he understood that he could receive a sentence of up to 5 years' imprisonment; that this Court would not be bound either by the government's sentencing recommendations or by the Sentencing Guidelines themselves; and that "the sentence imposed may be different [from] any estimate [his] lawyer [had given him]" (*id.* at 17, 21-23);

6.      he understood the effect of his appeal waiver and the appeal rights he was relinquishing (*id.* at 17, 19-20); and

7.      he was "fully satisfied with [his plea] counsel's representation and [the] advice [he had] received . . . from [his plea counsel], Mr. Butler" (*id.* at 10).

The undersigned found that Movant's guilty plea was "knowingly made and a voluntary plea" (*id.* at 28), and upon the undersigned's recommendation (Doc. 9), the District Judge accepted the plea (Doc. 10).

## C.      **The Sentencing Hearings**

Movant's sentencing hearing began on February 27, 2014, but it was adjourned before he was sentenced so that the parties could locate the transcript of a bankruptcy hearing at which, according to Movant, he had told the bankruptcy judge about a business he was trying to develop in Utah in order to generate an income stream for his Chapter 11 bankruptcy, into which efforts Movant had poured a substantial portion of the $183,000 at issue here.  (*See* Doc. 31-2 at 22, 102-04).  Movant testified:

> I did not ever want to conceal that. In my mind I was not concealing. . . . I told him that I had a lady and gentleman that were willing to go out there and try to secure some leases for us and that we had a gentleman

4

> that had some leases and we had the technology and know how if we
> could buy -- probably have to buy some equipment and all, but if he
> would give us a chance, give us some time and not foreclose on my
> mother's farm at that time I am sure we could get [the] business going.

(*Id.* at 22-23).  The Court attributed the entire $183,000 loss to Movant (*id.* at 82) and

allowed him a three-point reduction for acceptance of responsibility (*id.* at 84), but did

not pronounce sentence, as noted above.

On March 6, 2014, the sentencing hearing resumed.  With respect to Movant's

testimony at the initial sentencing hearing, the government stated:

> Nowhere in that transcript [of the March 7, 2012 bankruptcy hearing (*see*
> Doc. 45-9 at 7, where Movant's bankruptcy attorney, Ms. Denise Dotson,
> and not Movant himself, explains to the bankruptcy judge that Movant
> and his partners "are not going to need any funding with respect to the
> minerals, . . . so there is not going to be any upfront cost")] do I see
> anything that indicates that [Movant] told the bankruptcy judge that he
> would be using money from the corporate account that he had in the name
> of Hill and Hill Petroleum [the $183,000 at issue here] to invest in
> minerals or a mining business in Utah or anything that is related to that.
> In fact, the only thing that I see from that is that his lawyer tells the court,
> the bankruptcy court, there [are] not going to be any upfront costs. To me,
> that is contrary to the testimony that [Movant] gave [at the first
> sentencing hearing].

(Doc. 31-3 at 8-9).  Characterizing Movant's testimony at that first sentencing hearing

as "an attempt to minimize his offense conduct, [as] false, and [as] contrary to

representations that his attorney made on his behalf to the bankruptcy judge" (*id.* at

5

11), the government requested not only to deny Movant a sentence reduction for acceptance of responsibility but also to enhance his sentence for obstruction of justice (*id.* at 12).

The Court stated:

> I reflected back over the presentence report, I reflected back over the testimony given here on the stand last week by the defendant. There was something about the testimony that didn't ring right with me, that is why I got into this issue and asking you about it and we took the break. *And in my opinion, if it wasn't an outright perjury testimony, it certainly was misleading the court, I think.*

(*Id.* at 27 (emphasis added)).   The Court nevertheless declined the government's request and applied the sentence reduction for acceptance of responsibility, reducing Movant's maximum guideline sentence from 33 to 24 months, and then sentenced him at the top of his reduced guideline range of 18-24 months.  (*Id.* at 28-29).  Movant's judgment of conviction was entered on March 11, 2014.  (Doc. 18).  He did not file a direct appeal.

### D.   **The Motion to Vacate**

On January 28, 2015, Movant filed a counseled 28 U.S.C. § 2255 motion to vacate his sentence, raising only the following two grounds for relief:

1.      In mid-2011, Movant filed for bankruptcy in the action of Jacquelyn Hill and Charles Elliott Hill, II, Debtors, Bankruptcy Petition # 11-22786-jrs,

6

in the United States Bankruptcy Court for the Northern District of Georgia. Movant's bankruptcy attorney advised Movant, in effect, that he could operate his businesses as he would ordinarily. Movant used proceeds received by one of his businesses to operate other businesses. Movant's operation of the businesses was disclosed to the Bankruptcy Court and Trustee. Movant was charged with alleged concealment of assets under 18 U.S.C. § 152(1) in the United States District Court for the Northern District of Georgia relating to the proceeds. Movant's criminal attorney advised Movant to enter a guilty plea to the charge without obtaining evidence exculpatory of Movant and while aware that Movant denied that he knowingly and fraudulently concealed assets and that he possessed defenses to the charge. Criminal counsel furthermore refused or failed to attempt to withdraw Movant's guilty plea after he was requested to b[y] Movant.

2.   The Government called a single witness at Movant's sentencing, who testified to the instructions and purposes of Monthly Operating Reports in Bankruptcy Court. The only documents introduced by the Government at sentencing were the Monthly Operating Reports and the guidelines for the Monthly Operating Reports. The Court did not make factual findings regarding the amount of loss attributable to Movant under U.S.S.G. § 2B1.1(b)(1). Movant's counsel failed to secure the presence of Ms. Bobbye Casper, [Movant's] employee, or Ms. Sheila Chapman, [Movant's] accountant, as witnesses at the sentencing hearing. Counsel also failed to obtain the transcripts from the bankruptcy proceeding, to move for a downward departure based upon the fact that the loss calculation overstated the seriousness of the offense, or to object when [Movant] was not sentenced at the low end of his adjusted Guidelines range.

(Doc. 26 at 4, 5).

### E.   Motion To Amend The 28 U.S.C. § 2255 Motion To Vacate

On May 6, 2016, after the evidentiary hearing in this § 2255 case and after post-

7

hearing briefing had been completed, Movant filed a motion to amend (Doc. 53) to add

the following ground for relief to his § 2255 motion:

3.    Following his sentencing, Movant asked his counsel if he could appeal,
      and conveyed to counsel that he wanted to appeal. Counsel told Movant
      that an appeal would be difficult, and that it would better to have another
      lawyer examine the case to try to find potential errors. Counsel did not
      file an appeal.

(Doc. 53-1 at 8).   The parties had already argued and briefed this ground before

Movant filed his motion to amend.   (*See* Doc. 47 at 14-17; Doc. 48 at 14-16; Doc. 49

at 8-10).[1]   The government now argues that the proposed amendment is untimely.

(Doc. 57).

      A 28 U.S.C. § 2255 motion is governed by a one-year statute of limitations,

---

[1]Movant had argued that "the evidence [from the hearing] is in accord that [he] asked
[counsel] if he could appeal. As with [Movant's] inquiries about withdrawing his plea, [counsel]
listed excuses in an effort to cause [Movant] to change his mind. [Counsel] was ineffective in
disregarding [Movant's] request to appeal." (Doc. 49 at 8). Movant also had argued that counsel
failed to consult with him about filing an appeal. (*Id.* at 9 (quoting *Palacios v. United States*, 453
Fed. Appx. 887, 888-89 (11th Cir. 2011), to the effect that "[s]imply asserting the view that an
appeal would not be successful does not constitute 'consultation' in any meaningful sense")).

      The government had argued that "the record is clear that [Movant] never instructed counsel
to file a notice of appeal. [He] did ask counsel about the possibility of filing an appeal, but after
he and counsel discussed the relative merits of an appeal, [he] decided not to file a notice. That
consultation concerning an appeal fully discharged counsel's constitutional obligations with respect
to [an] appeal." (Doc. 48 at 2; *see id.* at 15 (asserting that Movant "never gave 'specific
instructions' that [counsel] file an appeal" and noting that at the evidentiary hearing, Movant
"explained that after making an initial inquiry as to whether he could file an appeal and being
advised by [counsel] that it would not be the best course, [he] did not thereafter ask [counsel] about
filing an appeal")).

which runs from the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Absent one of the circumstances set forth in subparagraphs two through four above — and there is no indication that any such circumstance exists here — the limitations period begins to run when a § 2255 movant's judgment of conviction becomes final. Movant's judgment and commitment order was entered on March 11, 2014. (Doc. 18). Because Movant did not file a direct appeal, his judgment of conviction became final 14 days later, on March 25, 2014. *See* Fed. R. App. P. 4(b)(1)(A); *Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011) ("[W]e have concluded [with respect to § 2255(f)] that when a defendant does not appeal his conviction or sentence, the judgment of conviction becomes final when the time for

9

seeking that review expires.").  Movant thus had until March 25, 2015 to file a timely § 2255 motion, which he did on January 28, 2015 (Doc. 26), but he filed his proposed amendment on May 6, 2016 (Doc. 53), well after the one-year limitations period had expired.

Federal Rule of Procedure 15(c)(1)(B) provides, however, that "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading" (formatting altered); *see Smith v. Buss*, No. 3:09cv278/MCR/EMT, 2011 U.S. Dist. LEXIS 19637, at *18-19 (N.D. Fla. Feb. 4) ("[R]elation back is allowable only 'when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in "both time and type" from the originally raised episodes.' " (citing *Mayle v. Felix*, 545 U.S. 644, 653-54, 657, 664 (2005), to the effect that "the test for whether an amended petition relates back [is] whether the original and amended claims 'are tied to a common core of operative facts.' " (footnote omitted))), *adopted by* 2011 U.S. Dist. LEXIS 19293 (N.D. Fla. Feb. 25, 2011).

The Eleventh Circuit has explained the application of the relation back rule as follows:

10

In *Mayle*, the defendant-appellant timely alleged that his conviction violated the Fifth Amendment because videotaped statements of a witness were played for the jury in violation of his right to confront the witness. However, five months after the one-year limitation imposed under the AEDPA expired, he moved to amend his petition to add another claim regarding his pretrial statements to the police. The magistrate judge denied the amendment, reasoning the claim did not relate back:

> [The defendant's] allegedly involuntary statements to police did not arise out of the same conduct, transaction, or occurrence as the videotaped interrogation of prosecution witness Kenneth Williams.

The magistrate judge also found that it did not suffice that [the Defendant's] Fifth and Sixth Amendment claims attack the same criminal conviction. The district court then adopted the magistrate judge's recommendation for dismissal of the defendant's claim. On appeal, however, the Ninth Circuit reversed the district court, finding that the defendant's "trial and conviction in state court" constituted a "transaction" within the meaning of Rule 15(c)(2).

The Supreme Court reversed the Ninth Circuit. In reaching its holding, the Court stressed that . . . the key words [in the relation back provision] are conduct, transaction, or occurrence. The Court further reasoned:

> Habeas Corpus Rule 2(c) . . . instructs petitioners to specify all available grounds for relief and to state the facts supporting each ground. Under that rule, [the defendant's] Confrontation Clause claim would be pleaded discretely, as would his self-incrimination claim. Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an "occurrence." [The defendant's] approach, the approach that prevailed in the Ninth Circuit, is boundless by comparison. A miscellany of claims for relief could be raised later rather than sooner and relate

11

> back, for "conduct, transaction, or occurrence" would be defined to encompass any pretrial, trial, or post-trial error that could provide a basis for challenging the conviction. An approach of that breadth . . . views "occurrence" at too high a level of generality.
>
> Relation back, the Court explained, is only allowable when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and type from the originally raised episodes.

*McLean v. United States*, No. 04-13534, 2005 U.S. App. LEXIS 19546, at *2-5 (11th Cir. Sept. 8, 2005) (citations and internal quotation marks omitted).

> The government argues that Movant's proposed amendment
>
> does not relate back because the core underlying facts differ entirely from those of his original claims. [Movant's] original [§ 2255] claims deal with his lawyer's performance in connection with his guilty plea and sentencing. The facts necessary to adjudicate those claims are temporally antecedent to the facts necessary to adjudicate [Movant's] new claim that counsel rendered ineffective assistance after the guilty plea and after the sentencing by allegedly not consulting with [Movant] about an appeal, and not filing an appeal. The claims are also different in type; the original claims focus on counsel's performance in evaluating [Movant's] trial case and advising whether to enter into and later seek to withdraw a guilty plea, whereas the amended claim focuses on counsel's performance in evaluating [Movant's] appellate case as to any prior errors. As such, the new claim does not arise from the same set of facts as the timely filed claim but rather arises from a separate occurrence in both time and type.

(Doc. 57 at 4-5 (citations and internal quotations omitted)).  The Court agrees.  *See Espinosa v. United States*, 330 Fed. Appx. 889, 892 (11th Cir. 2009) (affirming district

court's time-bar dismissal of movant's supplemental § 2255 claims of pretrial ineffective assistance because his original § 2255 motion concerned only "trial counsel's performance during specific moments of the trial and at sentencing," not counsel's pretrial performance); *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000) (affirming district court's time-bar dismissal of three new claims in movant's amended § 2255 motion because they "did not arise from the same set of facts as his original claims, but arose from separate conduct and occurrences in both time and type. In his original § 2255 motion, [he] claimed his counsel was ineffective for not objecting that the drugs [he] had were not 'crack cocaine,' because they lacked sodium bicarbonate, for not objecting to the drug weight as improperly including certain moisture content, and for not asserting that the government allowed its witness to perjure himself by claiming he expected no benefit. In contrast, [his] three new claims were that his counsel was ineffective for (1) allowing [him] to be sentenced based on three grams of cocaine that were not part of the same course of conduct as the other forty-nine grams of cocaine, (2) relying on a summary lab report instead of requesting the complete lab report, and (3) failing to advise him that a plea agreement might be possible.").

    As in the cases cited above, there is no common core of operative facts linking

13

Movant's original § 2255 claims — with respect to counsel's performance regarding the entry or possible withdrawal of Movant's guilty plea, and during sentencing — on the one hand, and Movant's proposed amendment, otherwise untimely, with respect to counsel's alleged failure to file a notice of appeal in compliance with Movant's request *after* he had been sentenced. The proposed amendment should be dismissed as untimely.

## II.    Ineffective Assistance Of Counsel In The Guilty Plea Context.

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013) (applying *Strickland* standard of review to ineffective-assistance-of-counsel claim raised in § 2255 motion). "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Strickland*, 466 U.S. at 697. The analysis involves two components, but a court need not address both if the petitioner "makes an insufficient showing on one." *Id.*

First, a federal court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly deferential" in

14

scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*).  Second, a federal court determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

> To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689. A defendant may satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have

15

> pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).
>
> The Supreme Court has determined that a defendant's representations at a plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). This is because "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74.

*Connolly v. United States*, 568 Fed. Appx. 770, 770-71 (11th Cir. 2014) (noting that " '[w]hen a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel' " (quoting *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984)), and affirming summary dismissal of § 2255 motion because appellant's "conclusory allegations of coercion by his attorney . . . failed to rebut the strong presumptions that his attorney's advice fell within the range of reasonable professional conduct and that [appellant's] sworn statements in his plea agreement and at his change-of-plea hearing were true").

## III.   **Movant's Grounds For Relief Fail.**

Movant notes in his post-hearing brief that the evidentiary hearing "has narrowed the issues for consideration to whether [he] received ineffective assistance

of counsel in pleading guilty and/or whether [plea counsel] provided ineffective assistance in failing to withdraw [his] guilty plea or [to file] an appeal." (Doc. 47 at 9). Because Movant "has completed the custodial portion of his sentence, . . . the question of whether [he] received ineffective assistance of counsel at sentencing is moot." (*Id.*).

### A.  <u>Movant's Claim Regarding The Entry Of His Guilty Plea Fails.</u>

### 1.  <u>Movant's Brief</u>

Movant characterizes the evidentiary hearing testimony as revealing that he and his trial counsel agree on the following points:

1.   Movant "repeatedly denied that he was guilty";

2.   trial counsel told Movant that if he pled guilty, "he would receive credit for acceptance of responsibility, and that they would be in a good position to argue for probation";

3.   the plea process was rushed, and, according to trial counsel, Movant "probably had misgivings on the day of the plea hearing"; and

4.   Movant received "no benefit" from the plea agreement, not even a sentence at the low end of the Sentencing Guidelines range.

(Doc. 47 at 11-12).

Movant argues that his guilty plea was unknowing and involuntary because trial counsel advised him that by pleading guilty "he would receive a sentence at the low

17

end of the Guidelines range, with credit for acceptance of responsibility, and that he had a good chance of arguing for probation." (*Id.* at 12). Movant asserts that but for trial counsel's erroneous advice, he "would have insisted on going to trial." (*Id.*). The Court notes, however, that by pleading guilty Movant did receive the benefit of a sentence reduction for acceptance of responsibility. (*See* Doc. 31-3 at 28-29).

### 2.    The Government's Response

The government responds that "the record is clear that [Movant] received extensive, competent advice of counsel before entering his guilty plea, including counsel evaluating [his] case, presenting [him] with his options (including going to trial or entering a guilty plea), and allowing [him] to make the final decision as to how to proceed." (Doc. 48 at 2). Movant understood that because he had concealed at least *some* money from his bankruptcy estate, he would be found guilty of the charged offense, and therefore the only remaining issue was the amount of money he concealed, that amount to be used by the Court in calculating his sentencing range; and he also understood that pleading guilty would make him eligible for a sentence reduction for acceptance of responsibility. (*Id.* at 3-4). "Because the amount of concealment was not an element of the offense but went to relevant conduct for sentencing, the decision was made that a guilty plea and the associated acceptance of

18

responsibility credit would be the best course." (*Id.* at 4). Counsel reviewed the Sentencing Guidelines with Movant, "and explained that concealment of only $10,000 could result in a Guidelines range low enough for [him] to argue credibly for a sentence of probation, but [counsel] never promised that by pleading guilty [Movant] would receive a sentence of probation." (*Id.*). Although Movant "expressed reservations to [counsel] about pleading guilty," he "never told [counsel] that he had changed his mind. Rather, each time [he] raised concerns about pleading guilty, he and [counsel] would review the evidence, discuss [his] options, including going to trial, and [he] would agree to continue with the guilty plea." (*Id.* at 4-5 (citation omitted)).

The government notes that Movant complains that counsel "allegedly promised him a probationary sentence, and [he] would not have pled guilty had he known he would be sentenced to a 24-month term of imprisonment," but "[t]he record refutes [the] allegation that [counsel] promised [him] a probationary sentence; [counsel] merely discussed probation as a possibility, not even a probability." (Doc. 48 at 10-11). The government argues that Movant cannot demonstrate that he was prejudiced by counsel's allegedly deficient performance because there is no reasonable probability that he would not have pleaded guilty and would have instead proceeded to trial — he "conceded his guilt, that is, that he knowingly concealed some amount of money in

19

connection with the bankruptcy proceedings[,]" and his "assertion that he did not believe himself guilty is confounded by this admission that he knew he failed to disclose funds—no matter how fleetingly he personally possessed them—in connection with the bankruptcy proceeding," and neither he nor counsel nor anyone else "could undo that fact." (*Id.* at 11). Movant was advised on numerous occasions that his sentence could be greater than a probationary one.

> [And] at no time did [he] advise anyone that he would go to trial if he was not assured a sentence of probation (or of any particular length for that matter). [He] knew his case hinged on contesting the loss amount at sentencing, and while [he] may have hoped he could prevail there, he knew that not prevailing was a real possibility.

(*Id.* at 12).

### 3. __Movant's Reply__

Movant replies that he "consistently testified during the [evidentiary] hearing . . . that, prior to entering his guilty plea, [counsel] told him that, from the way things looked, [he] would get probation or, at worst, six months to a year [in] home confinement." (Doc. 49 at 2). Movant notes that although counsel testified at the hearing that he advised Movant that "if the loss was low enough, probation was a possibility," he also testified that "he was optimistic about the potential for probation or home confinement." (*Id.*). Movant contends that the government's assertion that

20

he knew that he could receive a 24-month sentence is incorrect because Movant "did not recall [counsel] discussing anything but probation." (*Id.*).  Movant argues:

> The Government's representation that [he] never advised anyone that he would go to trial if he was not assured of a sentence of probation is also erroneous. [He] clearly stated in his testimony that if he had known that he would be sentenced to a term of imprisonment, he would have . . . gone to trial. Furthermore, after entering his plea and prior to sentencing, [he] told [counsel] that he wanted to see if he could withdraw his plea and have a jury trial.

(*Id.* at 3 (citations omitted)).   The Court notes, however, that the government's representation, to which Movant refers, concerns whether Movant advised anyone *before* entering his plea and receiving his sentence that he would go to trial if he received a term of imprisonment, and does *not* concern Movant's testimony at the evidentiary hearing 18 months later.  Movant repeats his assertion that he "ultimately received none of the benefits of acceptance of responsibility or a sentence at the low end of the recommended Guidelines range referred to in the Plea Agreement." (*Id.* at 5).  But, as noted above, this assertion is simply incorrect – he did benefit from his acceptance of responsibility, reducing his maximum sentence by 9 months.  (*See* Doc. 31-3 at 28-29).

### 4.   **Analysis**

The Court finds counsel's evidentiary hearing testimony consistent and credible,

21

whereas Movant's testimony is suspect.  One example should suffice.  At the plea hearing, when the prosecutor asked Movant if he had "reviewed these documents," including the proposed Plea Agreement, "today with [his] attorney," Movant answered that he had.  (Doc. 31-1 at 5).  But at the evidentiary hearing, Movant testified that he had *not* done so.  (Doc. 46 at 40).  When asked by his own attorney on direct examination to explain his response to the contrary at the plea hearing, Movant testified as follows:

> They asked me had I seen this, had they gone through that, and I said yes.
>
> *Q. Okay. So you're answering yes to had you seen the document?*
>
> *A. At the hearing, yes.*
>
> Q. But in terms of a review, you hadn't been through the document?
>
> A. No, not before.

(*Id.* at 44-45 (emphasis added)).  But that is *not* what he was asked at the plea hearing. (*See* Doc. 31-1 at 5).

> Movant's testimony continued a bit later as follows:
>
> Q. When you were asked [at the plea hearing] if you had reviewed the document, you answered yes because?
>
> A. It says -- he said like it says there, did you review this today, and they kind of -- I took it as that's kind of going over it today there.

22

Q. When you say go over it, what do you mean?

A. They were going -- I believe it was primarily, if I remember correctly, Mr. Phillips [the prosecutor] that was reading it and then going through the thing, and as they were reading and going through it, I do remember -- but I do remember one time -- I was nervous as everybody is as nervous as can be in here, and you don't hear and understand everything. . . .
But when I saw that figure of 183,000, wherever that was, I had to object because I was shocked when I saw the dollar figure on there.

Q. So you read through the document and saw that -- well, how did you read through it?

A. I scanned through it.

(Doc. 46 at 45-46). Movant's testimony on this point was so confusing and seemingly self-contradictory that even his own attorney seemed confused by it. Indeed, it was *before* the prosecutor reviewed the plea agreement at the plea hearing (*see* Doc. 31-1 at 12-18) that Movant testified that he had reviewed the agreement with plea counsel (*see id.* at 5).

Counsel's testimony, on the other hand, was consistent and credible. He testified that he went over the proposed Plea Agreement with Movant in person, in his office, "page by page, read through it, talked about what it meant. I asked if he had any questions." Movant had questions, and counsel answered them. (Doc. 46 at 160-61; *see id.* at 162 ("I would have [reviewed the appeal waiver with Movant] because

23

I went [through the proposed Plea Agreement] page by page with him.")).  Counsel testified that a few days or perhaps a week before the plea hearing, the prosecutor emailed him a copy of the proposed Plea Agreement for counsel's and Movant's review, and, prior to the hearing, he and Movant went over it "page by page and talked about everything on that page."  (*Id.* at 202-03; *see id.* at 163).

Notwithstanding Movant's credibility issues, it is apparent from his Plea Agreement and his testimony at the plea hearing that he fully understood the basis for, and the consequences of, his guilty plea, and in particular the inability of anyone, including his own counsel, to predict his ultimate sentence; and that, even with this knowledge, he pled guilty voluntarily, without coercion or misconception.  And when asked by his post-conviction attorney at the evidentiary hearing whether he entered his plea voluntarily, Movant replied that he did.  (Doc. 46 at 77).

The Court credits plea counsel's testimony that he and Movant often discussed Movant's reservations about pleading guilty, but each time, after reviewing his options, Movant decided to proceed with his guilty plea.  (*See id.* at 164-65 ("He never told me to stop right here.  He might have said sure, I don't want to plea, I have these concerns, and we would talk about it, but at the end of those conversations, he would always tell me okay, let's keep going down this path we're going down, let's continue with the

24

plea.”); *id.* at 171-72 (“That was a conversation [concerning Movant’s reservations about pleading guilty] we had numerous times . . . . It was always his decision.  He never told [m]e stop, I don’t want to do this.  It was always his decision to proceed on the path we were going down.”)).  The Court also credits counsel’s testimony that, although he was optimistic for a better outcome, he never suggested to Movant that a sentence without incarceration was probable, much less a near certainty, as Movant has stated in his own testimony.  Counsel testified:

> I felt if the Court found the amount of loss was as low as we thought it was, there was at least -- I don’t remember. The guidelines might have required six months. I can’t remember exactly now, but I felt that we would have been in a good position to argue for a straight probation given the much lower amount of loss.
>
> *Q. Did you promise him that he would get probation if he plead guilty?*
>
> *A. No.*
>
> Q. Did you advise him that he most likely would receive a sentence of only probation?
>
> A. I don’t think I would have said most likely. I think I would have said it depended on the amount of loss determination.
>
> Q. Did you ever advise him of how likely you thought it was that you and [Movant] would prevail on your position with respect to the amount of loss?
>
> A. It’s always a tough question. I try to stay away from predicting the

25

future, absolutely.

(*Id.* at 168-69 (emphasis added); *see, e.g., id.* at 37 (Movant's testimony, oft repeated, that counsel "said the way this looks you'll get your probation, and he said the most you could do -- he said if it looked like the judge wanted to make a point, [he would] ask for six months to a year of home confinement, and he said you'll still be home with your children")).  Counsel did not recall "quantifying possibilities or probabilities," *id.* at 204, although he did suggest to Movant that if, and only if, the Court accepted the defense's amount-of-loss argument, a sentence of probation was *possible* (*see id.* at 167-68 ("we looked at the guidelines and the points, . . . and if I recall correctly what we talked about is if the amount of loss was determined by the Court to be the 10,000 mark like we had determined through our work, the points were lower enough to where *probation is a possibility*, but if the amount of loss stayed at [183,000], the points were going to be drastically higher, and that was going to be a scenario that would involve some sort of confinement, and then we went over kind of the two options, and it was really an amount of loss issue" (emphasis added))).

Movant's first ground for § 2255 relief boils down to his dissatisfaction with the outcome of his sentencing.  In fact, Movant testified at the evidentiary hearing that his plea, although voluntary at the time, as noted above, was not knowing because he did

26

not know the consequences of his plea.  (*See id.* at 78 ("Q. Do you feel like your guilty plea was made knowingly, and knowingly meaning knowing the consequences of entering a guilty plea? *A. No, not with what I ended up with.* Q. So in terms of the consequence of your punishment, you don't feel it was knowing? A. No. Q. And that's based on what [counsel] told you? A. That's on what he told me and how we were proceeding." (emphasis added))).

But Movant, who never previously expressed a desire to proceed to trial to anyone except his counsel and other members of his defense team — and each time, after doing so, made the decision to proceed with his guilty plea — cannot now claim ineffective assistance of counsel because he is dissatisfied with his sentence.  It is only in hindsight, after receiving his sentence, that Movant has expressed his dissatisfaction with the performance of his plea counsel.  This belated challenge to the effectiveness of counsel's assistance is insufficient to overcome Movant's "[s]olemn declarations in open court," *see Blackledge*, 431 U.S. at 74, that he understood the sentencing consequence of his plea, including a possible term of imprisonment of five years (*see* Doc. 31-1 at 21-23), and that he was satisfied with counsel's performance (*see id.* at 10).  His first ground for relief fails.

**B.**     **Movant's Claim Regarding Counsel's Failure To Seek Withdrawal**

**Of The Guilty Plea Also Fails.**

### 1.    **Movant's Brief**

Movant states that at the evidentiary hearing, counsel "admitted that he had conversations with [Movant] following the plea on the topic of withdrawing the plea," but rather than moving to withdraw the plea himself, he advised Movant "to consult with another attorney."  (Doc. 47 at 13).  Movant argues that "[t]he weight of the testimony presented during the hearing indicated that [Movant] believed that he had been wrong to enter into the plea and wanted to withdraw his guilty plea," and that "[he] communicated his desire on more than one occasion to [plea counsel,]" who nevertheless "failed to take any step to withdraw [the] plea."  (*Id.* at 13).  Movant argues that by advising him to consult with another attorney about withdrawing his plea, counsel abandoned his duty to Movant and thus provided ineffective assistance with respect to this issue.  (*Id.* at 14).

### 2.    **The Government's Response**

The government responds that "the record is clear that [Movant] never instructed counsel to . . . withdraw his guilty plea.  Even if [he] had so instructed counsel, the record does not support a finding that [he] would have sought to withdraw his plea and that the Court would have allowed it, as there were no meritorious grounds for

28

withdrawal." (Doc. 48 at 2). Movant "cannot now rely on his initial inquiry about whether he could withdraw his plea and in so doing glance over the subsequent deliberative process whereby he and [counsel] always arrived at the same conclusion: that seeking to withdraw the plea was not in [his] interests." (*Id.* at 13). The government contends that Movant also cannot show prejudice arising from counsel's actions because he "cannot show he would have sought to withdraw his plea, and any attempt to do so [] was unlikely to [succeed] under the applicable 'fair and just' standard" of FED. R. CRIM. P. 11(d)(2)(B). (*Id.* at 14).

### 3.   Movant's Reply

Movant replies:

[T]he totality of the circumstances could have furnished fair and just grounds for [counsel] to withdraw his guilty plea. [Movant] stated that [counsel] led him to believe that he would receive a sentence of probation or home confinement. [Movant] was motivated to go through with the plea because he believed that he would be able to have contact with his children. Moreover, [counsel's] extensive written objections to the Presentence Investigation Report were not even considered by the Court, and [counsel] admitted that the objections might have influenced the Court. [And counsel] could have pursued withdrawal of the plea shortly after the change of plea hearing, without unduly interfering with judicial economy and with a minimum of prejudice to the Government.

(Doc. 49 at 7 (citations omitted)).

### 4.   Analysis

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."  FED. R. CRIM. P. 11(d)(2)(B).

> In determining whether a defendant has met his burden to show a "fair and just reason" to withdraw a guilty plea, a district court may consider the totality of the circumstances, including: (1) availability of the close assistance of counsel; (2) knowing and voluntary plea; (3) conservation of judicial resources; and (4) potential for prejudice to the government upon withdrawal of the plea. If an appellant does not satisfy the first two factors of this analysis, [the court] need not thoroughly analyze the remaining factors.

*United States v. Solarte*, 636 Fed. Appx. 511, 2016 U.S. App. LEXIS 325, at *2-3 (11th Cir. 2016) (citation omitted); *see id.* at *3 ("The record supports that [appellant's] plea was given knowingly and voluntarily and that he received the close assistance of counsel throughout the proceedings. The court conducted a thorough plea hearing, during which [appellant] testified that he was competent, aware of the charges, and aware of the consequences of his guilty plea.  [Appellant] also testified that his plea was not coerced or forced." (citation omitted)); *see id.* at *5-6 (because of the foregoing factors, appellant "failed to show there were fair and just reasons for the court to allow him to withdraw his guilty plea").

Movant testified at the evidentiary hearing that "a couple of weeks" after he

30

entered his plea, having spoken to several people, he called counsel and said "I shouldn't have done that, and I wanted to see if we could withdraw the plea," but counsel persuaded him not to go down that road. (Doc. 46 at 48-49). It appears that Movant did not broach the subject again until after his initial sentencing hearing was adjourned, when he was in a state of shock over the Court's $183,000 loss determination and over how "horribly wrong" the hearing had gone — an outcome he never could have imagined "in [his] wildest dreams." (*Id.* at 66-67, 70-71).

But Movant has not provided any evidence, aside from his own after-the-fact testimony, that he actually instructed counsel to withdraw his guilty plea or that he would have withdrawn it, just as he has provided no evidence, other than his own testimony — which has been shown to be unreliable, as discussed above — that he would have foregone the opportunity to plead guilty in the first place and would have gone to trial instead. Indeed, Movant acknowledged at the evidentiary hearing that if he ever instructed counsel to withdraw his plea, he did so "just the first time, and then when he told me that they would sentence me to more time, I didn't restate it again." (*Id.* at 87).

Counsel testified at the evidentiary hearing that although he had "a few conversations" with Movant, perhaps "four or five times" after the entry of the plea,

31

"where [Movant] would bring up questions, concerns, second guessing, and we would discuss those," each time Movant "agreed to keep proceeding" on the road they were on, i.e., to argue at sentencing over the amount of loss.  (*Id.* at 205-06).  Counsel testified that he "never talk[ed Movant] out of anything."  (*Id.* at 206; *see id.* at 174 (Movant "never told [counsel] to withdraw his plea"); *id.* at 213 (Movant "never said let's withdraw the plea"); *id.* at 224 (Movant "never told [counsel] withdraw my plea, I want a trial")).

Like the appellant in *Solarte*, Movant has not shown "fair and just reasons for the court to allow him to withdraw his guilty plea," *see Solarte*, 2016 U.S. App. LEXIS 325, at *6, and thus he has not shown that he was prejudiced by counsel's allegedly deficient performance — i.e., that there was a reasonable probability that this Court would have allowed him to withdraw his plea during the interim between his first sentencing hearing and its resumption.  Ground two also fails.

## IV.   Certificate Of Appealability

A § 2255 movant must obtain a certificate of appealability (COA) before appealing the denial of a motion to vacate.  28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B).  A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard

32

is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted). A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)). Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case). Because there is no reasonable argument that Movant's claims regarding the entry or possible withdrawal of his guilty plea have merit, or that his later-filed claim is timely, a COA should not issue in this matter.

## V.   <u>Conclusion</u>

**IT IS RECOMMENDED** that Movant's 28 U.S.C. § 2255 motion (Doc. 26) be **DENIED**; that the Government's motion to dismiss the § 2255 motion based on Movant's appeal waiver (Doc. 28) be **DENIED**; that Movant's motion for leave to amend his § 2255 motion (Doc. 53) be **DENIED**; and that Movant be **DENIED** a

33

certificate of appealability.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this <u>29th</u> day of <u>June,</u>  2016.

 /s/ J. CLAY FULLER     
J. CLAY FULLER
United States Magistrate Judge

34